**FILED**

JAN 1 0 2017

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# GREENEVILLE DIVISION

IN THE MATTER OF THE SEARCH OF )
INFORMATION ASSOCIATED )
WITH THE CELLULAR TELEPHONES )
ASSIGNED CALL NUMBERS )
(423) 702-1934 AND (865) 221-3753 )
THAT ARE STORED AT PREMISES )
CONTROLLED BY CELLCO )
PARTNERSHIP DBA VERIZON WIRELESS )

No. 2:17-MJ-Ｚ

**TO BE FILED
UNDER SEAL**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Todd A. Brewer, United States Department of Justice, Drug Enforcement

Administration, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information

associated with certain accounts that is stored at premises owned, maintained, controlled, or

operated by CELLCO Partnership DBA Verizon Wireless, a wireless provider headquartered at

180 Washington Valley Road, Bedminster, New Jersey 07921. The information to be searched

is described in the following paragraphs and in Attachment A. This affidavit is made in support

of an application for a search warrant under Title 18, United States Code, Sections 2703(a),

2703(b)(1)(A) and 2703(c)(1)(A) to require CELLCO Partnership DBA Verizon Wireless to

disclose to the government records and other information in its possession pertaining to the

subscriber or customer associated with the accounts, including the contents of communications.

2. I am employed with the U.S. Drug Enforcement Administration (DEA) as a Special

Agent, and have been so employed for over nineteen (19) years. Prior to my employment with

the DEA, I was a Police Officer for the Prince William County Police Department in Northern

1

Virginia for approximately four (4) years. Prior to my employment with the PWCPD, I was a Deputy Sheriff with the Loudoun County Sheriff's Office in Loudoun County, Virginia for approximately one (1) year. I was trained as a DEA Special Agent at the DEA/FBI Academy in Quantico, Virginia. While at the DEA/FBI Academy, I received specialized training in the Controlled Substances Act, Title 21, United States Code, including, but not limited to Sections 841 (a)(1) and 846 (Conspiracy and Controlled Substance Violations), criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute cocaine, heroin, methamphetamine, marijuana and other dangerous drugs prohibited by law, search and seizure law, and many other facets of drug law enforcement.

3. During my employment as a DEA Special Agent, I have participated in numerous investigations involving the seizure of the above listed controlled substances, the seizure of narcotic related records and other types of evidence that document a criminal organization's activities in both the manufacturing and distribution of controlled substances. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance and various types of informants and cooperating sources. Through these investigations, my training and experience, and conversations with other experienced Agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle and safeguard narcotics, to distribute narcotics, and collect and launder related proceeds. I am aware of the sophisticated tactics they routinely use to attempt to thwart any investigation of their narcotics organizations. My knowledge of these tactics, which include the utilization of numerous different cellular telephones, beepers, counter surveillance, elaborately planned distribution schemes tied to legitimate businesses, false or fictitious

2

identities, and coded communications and conversations, has been particularly useful and relevant to this investigation.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled or operated by CELLCO Partnership DBA Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(C), have been committed, and are being committed, by others known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

6. The information contained in this affidavit is based on my personal observations, observations of other law enforcement officers, observations of Cooperating Sources (CS) as related to me, my review of official police and government reports, my review of records and documents gathered during this investigation, and consultation with other Agents involved in the investigation. This affidavit contains information necessary to support probable cause for the search warrant. The information contained in this affidavit is not intended to include each and every fact and matter observed by or known to the United States.

7. This affidavit is submitted in support of a request that a search warrant be issued for the stored electronic communications, specifically text messages, associated with the cellular telephones bearing telephone numbers (423) 702-1934 (hereinafter referred to as Target Telephone #1) and (865) 221-3753 (hereinafter referred to as Target Telephone #2).

8. According to the records of Verizon Wireless, Target Telephone #1 is subscribed to by Joe Thunder at 6725 Ringgold Rd., Chattanooga, TN. As a result of this investigation, your affiant believes that Joe Luther SHOLTZ utilizes Target Telephone #1 to distribute crystal methamphetamine in the Eastern District of Tennessee.

9. According to the records of Verizon Wireless, Target Telephone #2 is a prepaid account with no subscriber information available. As a result of this investigation, your affiant believes that Leslie STEELMAN utilized Target Telephone #2 to distribute crystal methamphetamine in the Eastern District of Tennessee.

## PROBABLE CAUSE

10. On June 15, 2016, CS-1 was interviewed in Church Hill, TN pursuant to his arrest in possession of methamphetamine, marijuana and several handguns. CS-1 stated that Lisa Weems and Timmy Rose sold large amounts of "ice" (crystal methamphetamine) in Hawkins County and Greene County, TN. CS-1 provided the address of 309 Charley St., Church Hill, TN at which Weems and Rose stored drugs, money and firearms.

11. On that same date, a search warrant was executed at 309 Charley St., Church Hill, TN. Seized pursuant to the search warrant were approximately 400 grams of crystal methamphetamine, $16,989.00 U.S. Currency and a handgun. Lisa Weems and Tim Rose were both present at the time of the search warrant.

12. On July 7, 2016, Tim Rose was interviewed in Hawkins County, TN. Rose stated

4

that he was introduced to Lisa Weems approximately six (6) months ago by Austin Fields. Rose stated that he attended a cookout at Weems' residence where approximately 15 people were smoking "ice" (crystal methamphetamine). Rose stated that all those people were drug customers of Weems.

13. Rose stated that after a few months, he started making trips with Weems to obtain crystal methamphetamine from "Boss". Rose stated that they typically picked up 15 to 20 ounces of crystal methamphetamine at a time from "Boss". Rose stated that these trips occurred approximately once a week or whenever Weems ran out of methamphetamine. Rose described "Boss" as a big white male with short gray hair. Rose stated that "Boss" may live near Knoxville, TN. (Based upon the latest arrest of Joe Luther SHOLTZ in October 2016, SHOLTZ was described as being 6'03", 220 lbs. with gray hair. As a result of this investigation and the description contained herein, your affiant believes that when referring to "Boss", Rose was referring to Joe Luther SHOLTZ.)

14. On August 12, 2016, Jerry Smith was interviewed in Kingsport, TN pursuant to his arrest for possession of methamphetamine. Smith stated that the methamphetamine in his possession was supplied by David "Junior" Estep. Smith stated that Estep was supplied crystal methamphetamine by "Jo Jo". Smith stated that Estep was in trouble with "Jo Jo" because money was missing. (During an interview on October 4, 2016, David Estep told agents that Joe SHOLTZ had an AKA of "Jo Jo". As a result of this investigation, your affiant believes that when referring to "Jo Jo", Smith was referring to Joe Luther SHOLTZ.)

15. Smith stated that he may have met Lisa Weems through Austin Fields at Fields' trailer. Smith stated that he felt as though Weems was recruiting him to sell methamphetamine for her.

5

16. On the same date, Marina Guyer was interviewed in Kingsport, TN. Guyer was with Jerry Smith at the time of his arrest. Guyer stated that David Estep was a distributor of methamphetamine and she had observed Estep in possession of over ten (10) ounces at one time. Guyer stated that Estep had many people selling for him, including Alex Milne. Guyer stated that she had received methamphetamine from Milne in the past at the trailer of Austin Fields.

17. On September 2, 2016, Alex Milne was interviewed in Washington County, TN. Milne stated that he sold "ice" (crystal methamphetamine) for Jerry Smith, and still owed Smith over $1,000.00 in drug debt. Milne stated that he had observed Smith in possession of 50 to 60 ounces of crystal methamphetamine at one time. Milne stated that he had also observed David "Junior" Estep in possession of 50 to 60 ounces of crystal methamphetamine. Milne stated that he had observed Austin Fields in possession of two (2) ounces of crystal methamphetamine. Milne stated that Lisa from Hawkins County was the main supplier of methamphetamine. (As a result of this investigation, your affiant believes that when referring to "Lisa from Hawkins County", Milne was referring to Lisa Weems.)

18. On September 23, 2016, Alex Milne was interviewed in Washington County, VA pursuant to his arrest for possession of crystal methamphetamine. Milne stated that his source of supply for methamphetamine was "Mama Lisa" who lived off of Highway 11W in Hawkins County, TN. Milne stated that he had recently been with "Mama Lisa" when she made a trip to Georgia and picked up 50 ounces of crystal methamphetamine. Milne stated that a phone number for "Mama Lisa" was (401) 548-0138. (As a result of this investigation, your affiant believes that when referring to "Mama Lisa", Milne was referring to Lisa Weems.)

19. According to the records of T-Mobile, telephone number (401) 548-0138 was subscribed to by Joe SHALTZ at 259 North Ridge, Knoxville, GA, 30753.

6

20. On September 27, 2016, CS-2 was interviewed in Blount Co., TN pursuant to his/her arrest for possession of crystal methamphetamine. CS-2 provided information to law enforcement that was against his/her penal interests. CS-2 stated that he/she had been involved with crystal methamphetamine for several years.

21. CS-2 stated that he/she met Joe SHOLTZ in March, 2016 for the purpose of obtaining methamphetamine. CS-2 stated that SHOLTZ fronted approximately five (5) to ten (10) ounces of methamphetamine to CS-2 at first. CS-2 stated that SHOLTZ increased the amount fronted to the CS to 15 ounces at a time. CS-2 stated that he/she paid SHOLTZ $600.00 per ounce of methamphetamine once it was sold. CS-2 stated that the crystal methamphetamine with which the CS was arrested had been supplied by SHOLTZ.

22. On October 4, 2016, David Estep, Jr. was interviewed in Sullivan Co., TN pursuant to his arrest for possession with the intent to distribute methamphetamine. Estep stated that he/she had been selling methamphetamine since his release from jail in December, 2013. Estep stated that he had several suppliers of methamphetamine since that time.

23. Estep stated that approximately six (6) months ago, he began getting supplied crystal methamphetamine by Joe SHOLTZ who was possibly from Knoxville, Chattanooga, or Georgia. Estep stated that SHOLTZ was known by the monikers "Boo Boo" and "Jo Jo". Estep stated that he started getting fronted ten (10) ounces of methamphetamine at a time from SHOLTZ, but quickly moved up to amounts between four (4) and six (6) pounds at a time. Estep stated that he sold the methamphetamine in grams, "8 balls" (1/8 ounce), and ounces.

24. Estep stated that approximately two (2) months ago, he lost six (6) kilograms of methamphetamine due to theft and law enforcement seizures. Estep stated that two (2) females were transporting his methamphetamine when stopped by law enforcement. Estep stated that he

7

usually paid SHOLTZ $20,000.00 per kilogram of methamphetamine. Estep stated that due to the losses, SHOLTZ sent two unknown males to do physical harm to Estep. Estep stated that he evaded physical harm, and started working directly for SHOLTZ as a drug courier to make up the losses.

25. Estep stated that SHOLTZ was the most prominent supplier of methamphetamine to the area of Sullivan County, TN. Estep stated that the second largest methamphetamine distributor in the area was "Mama Lisa", who was also supplied by SHOLTZ. (As a result of this investigation, your affiant believes that when referring to "Mama Lisa", Estep was referring to Lisa Weems.)

26. Estep stated that his cellular telephone number was (423) 967-2198. According to the records of AT&T, the subscriber to telephone number (423) 967-2198 was David Estep at 209 Lakeview St., Bristol, TN.

27. On October 5, 2016, Joe SHOLTZ was arrested in Chattanooga, TN on outstanding drug related warrants from Georgia. In an effort to escape prior to capture, SHOLTZ used his vehicle to ram several police cars. As the result of an inventory of SHOLTZ' vehicle, $81,892.00 U.S. Currency and approximately 20 grams of crystal methamphetamine were seized. SHOLTZ was not detained due to an outstanding medical condition, however was placed on GPS electronic monitoring by the court.

28. On November 3, 2016, Robert Estes was interviewed in Hawkins County, TN. Estes stated that his source of supply for methamphetamine was Justin Arnold. Estes stated that Arnold was selling approximately one (1) pound of crystal methamphetamine per day. Estes stated that Arnold was supplied crystal methamphetamine by "The Boss".

8

29. Estes stated that Lisa Weems had the same methamphetamine source of supply as Arnold. Estes stated that Weems introduced Estes to "The Boss". Estes stated that "The Boss" was a heavy set white male in his 50's from Georgia. Estes stated that "The Boss" conducted his drug business out of Knoxville. (As a result of this investigation and the description contained herein, your affiant believes that when referring to "The Boss", Estes was referring to Joe SHOLTZ.)

30. On December 6, 2016, your affiant was advised by Knoxville Resident Office DEA TFO Jon Wilson that Target Telephone #1 was being utilized by Joe Luther SHOLTZ. TFO Wilson advised your affiant that SHOLTZ was currently on court ordered GPS electronic monitoring and was communicating with his court appointed monitors on Target Telephone #1. In addition, TFO Wilson was currently monitoring jail telephone calls in Anderson County, TN in which SHOLTZ was utilizing Target Telephone #1 to communicate with inmates.

31. TFO Wilson advised your affiant that Target Telephone #2 was being utilized by Leslie STEELMAN – a crystal methamphetamine distributor for Joe SHOLTZ in the area of Knoxville, TN.

32. On December 12, 2016, a search warrant was applied for and obtained in the Eastern District of Tennessee for text message content stored in the accounts of telephone number (423) 702-1934 (Target Telephone #1). In response to the execution of this search warrant on Verizon Wireless, agents received text messages stored in those accounts from November 29, 2016 to December 12, 2016. The following is an excerpt from the search warrant results:

**November 29, 2016**

(423) 967-2198 (David Estep, Jr.) to Target Telephone #1, "*Hey are we on today info I'm about to leave how far do I got to come down for a chat and also I didn't need you*

9

*to see if you can maybe help me out with a little cuz I can't come and buying all of it I can only be like 1 or something*"

(423) 367-0274 (Jerry Smith) to Target Telephone #1, "*I was kinda hoping we could talk about things and hopefully make an arrangement that will help us both example I have 4000 maybe more and people here I been seeing are slow walking*"

Smith to Target Telephone #1, "*Oops I can have around 7*"

Target Telephone #1 to Smith, "*Get it's slow start with me on this bracelet some fukr robbed my daughter up there so til I get my self back up I've got a lotta money owed to me nobody wants to help so I help who is helping me*"

Target Telephone #1 to Smith, "*Look I need about 2000 so if you can pay 1 on bill I give you 2 when she gets bsck*"

Target Telephone #1 to Smith, "*2000 1 on bill / 2 for other 1000*"

33. Based on my training and experience, and my knowledge of this investigation, I believe that David Estep, Jr. contacted Joe SHOLTZ on Target Telephone #1 to arrange a meeting and possibly obtain one (1) ounce of methamphetamine. I believe that Jerry Smith contacted SHOLTZ on Target Telephone #1 and advised SHOLTZ that he had $7,000.00 to pay off a past drug debt and purchase additional methamphetamine. I believe that SHOLTZ told Smith that if he sent $2,000.00, $1,000.00 would go toward the debt and Smith could have two (2) ounces of methamphetamine for the other $1,000.00.

**November 30, 2016**

(423) 367-0274 (Jerry Smith) to Target Telephone #1, "*I need the name to send to asap it will be coming from Alexis Calhoun*"

Target Telephone #1 to Smith, "*Dale Sholtz this one*"

10

Target Telephone #1 to (423) 838-4821 (Dale Sholtz), "*Gonna have some money sent in your name*"

(423) 967-2198 (David Estep, Jr.) to Target Telephone #1, "*Hey I got me my money together is it good to come*"

Target Telephone #1 to Estep, "*No going now myself*"

Smith to Target Telephone #1, "*Bobby Gene Mumpower Bristol VA 276 285 4047*"

Smith to Target Telephone #1, "*That first one*"

Smith to Target Telephone #1, "*Sending second now*"

Target Telephone #1 to Smith, "*Good man it helps*"

Smith to Target Telephone #1, "*Paul was inside sending second he left with out giving me reference number but it will be sent in the name of Paul Borrow please check and make sure it is there*"

Target Telephone #1 to Smith, "*Need number or cant get it*"

Target Telephone #1 to (502) 415-6665 (Brandon Thorpe), "*They sent one in your name Paul Borrow 880 588 054*"

(423) 888-4239 (Elizabeth Patterson) to Target Telephone #1, "*Do I need call Fred now*"

Patterson to Target Telephone #1, "*Or wait til hit GA. You should call him and tell him about $ and how far away I am. And I'll call him when 30 mins away*"

Target Telephone #1 to Patterson, "*Trying get you two a working relationship*"

Patterson to Target Telephone #1, "*I'm only taking 100 out of that 10,5 so can fill up and get cigs*"

Patterson to Target Telephone #1, "*Passing Tunnel Hill dad*"

11

Target Telephone #1 to Patterson, "*They get back text he him*"

Patterson to Target Telephone #1, "*Didn't have to text they call me back everything ok. What address*"

Target Telephone #1 to Patterson, "*2522 Cruse Rd NW Atlanta GA*"

Patterson to Target Telephone #1, "*Be there in a few minutes*"

Patterson to Target Telephone #1, "*Be here in minutes*"

Patterson to Target Telephone #1, "*On way home now*"

Target Telephone #1 to Patterson, "*Good be careful Thorpe ok drive*"

Patterson to Target Telephone #1, "*Will do and yes Thorpe ok*"

Target Telephone #1 to David Estep, Jr., "*Ok how many you want*"

Jerry Smith to Target Telephone #1, "*Did everything work out today? If so when can I come see you*"

Target Telephone #1 to Smith, "*Yea but didn't get money out. Spelled name wrong on one other Thrope ID bad*"

Target Telephone #1 to Smith, "*But when they get half way I let you know*"

Smith to Target Telephone #1, "*Ok thanks*"

34. Based on my training and experience, and my knowledge of this investigation, I believe that Jerry Smith contacted Joe SHOLTZ on Target Telephone #1 to send drug proceeds in the names of other people. I believe that David Estep, Jr. contacted SHOLTZ on Target Telephone #1 to advise SHOLTZ that Estep had collected his drug proceeds and wanted to purchase additional methamphetamine. I believe that SHOLTZ utilized Target Telephone #1 to communicate with his daughter, Elizabeth Patterson, whom he sent to pick up methamphetamine

12

from a source of supply in Atlanta, GA ("Fred"). I believe that SHOLTZ then contacted Smith and Estep to advise them that the methamphetamine would soon be available.

**December 1, 2016**

Target Telephone #1 to (423) 341-0330 (Jerry Smith), "*What you wanting when come down*"

Smith to Target Telephone #1, "*As much as possible. I hsve a stack still working need to contact Paul see wat he had half wat we sent should be payment help us out we help u out an bring all we can to get as much as possible let us know when we need to leave*"

Smith to Target Telephone #1, "*I have 2300 now but more later so I'll let you know early. Thanks my friend*"

Smith to Target Telephone #1, "*I'm gathering the last up now it's looking to be between 4 or 5000.*"

Smith to Target Telephone #1, "*I'll let you know when I leave*"

Target Telephone #1 to Smith, "*I'll send you an address*"

Target Telephone #1 to (865) 221-3753 (Target Telephone #2), "*Hey man I been fukd up but I got you call me*"

Target Telephone #1 to Target Telephone #2, "*Apt 16*"

Smith to Target Telephone #1, "*Im on my way 4500 where do I need to go*"

Smith to Target Telephone #1, "*Ok amount just changed to 5000*"

13

Target Telephone #1 to (423) 967-2198 (David Estep, Jr.), "*Come on*"

Target Telephone #1 to Estep, "*Give me a number*"

Target Telephone #1 to Smith, "*Got 8 left*"

Target Telephone #1 to Smith, "*Til I go tomorrow evening*"

Smith to Target Telephone #1, "*I have around 2500 right now but if you trust me I'll take him I think you know I'm good for it*"

Target Telephone #1 to Smith, "*We see in morning can't not that I don't let out but we see*"

Smith to Target Telephone #1, "*Okay if I get to 4000 real quick I'll call you*"

Smith to Target Telephone #1, "*You said let's make some money so you know I make it for us*"

Smith to Target Telephone #1, "*I have four thousand for the 8 and 1000 on my debt if you want me to come right now*"

35. Based on my training and experience, and my knowledge of this investigation, I believe that Joe SHOLTZ utilized Target Telephone #1 to communicate with Jerry Smith regarding Smith obtaining methamphetamine from SHOLTZ. I believe that Smith made a trip to meet with SHOLTZ and purchased $5,000.00 worth of methamphetamine. I believe that after Smith returned to Northeast TN, SHOLTZ advised Smith that he had eight (8) ounces of methamphetamine remaining. I believe that SHOLTZ also communicated with David Estep, Jr. and Leslie STEELMAN on Target Telephone #2 about supplying them with methamphetamine.

**December 2, 2016**

14

Target Telephone #1 to (678) 333-8245 ("Fred"), "*Will be there at 730 today*"

Target Telephone #1 to (678) 883-6210 ("Fred"), "*Hey ready today*"

Target Telephone #1 to "Fred", "*Good ready leave now*"

Target Telephone #1 to "Fred", "*Going to hold til you call*"

(423) 341-0330 (Jerry Smith) to Target Telephone #1, "*I'll locate her soon as I get moving do you need some sent. I'm up to 9000*"

Target Telephone #1 to Fred, "*34.000*"

Fred to Target Telephone #1, "*Ok*"

(423) 967-2198 (David Estep, Jr.) to Target Telephone #1, "*Hey I can pull out right now if you say it's good and be there pretty quick. If u can't then I got figure out what else I need do*"

(423) 895-4057 (Lisa Weems) to Target Telephone #1, "*What time u want me 2 ccme ur way*"

Target Telephone #1 to (423) 888-4239 (Elizabeth Patterson), "*Tell Fred you will be back tomorrow I got almost all gone*"

Patterson to Target Telephone #1, "*Ok Pops*"

Target Telephone #1 to "Fred", "*I'll be back tomorrow I'm back it's bout to be like bfore my friend all getting worked out tks*"

36. Based on my training and experience, and my knowledge of this investigation, I believe that Joe SHOLTZ contacted his methamphetamine source of supply ("Fred") and advised him that SHOLTZ would be down today. I believe that Jerry Smith contacted SHOLTZ to advise him that Smith had collected $9,000.00 in drug proceeds. I believe that SHOLTZ advised "Fred" that he was going to need $34,000.00 worth of methamphetamine. I believe that David

15

Estep, Jr. and Lisa Weems contacted SHOLTZ to determine when the methamphetamine would be ready to be picked up.

**December 3, 2016**

Target Telephone #1 to Target Telephone #2, "*Just woke up they put off till 8 this morning everyone up we picking up at 8 come home they no us had issue last night*"

Target Telephone #1 to (678) 883-6210 ("Fred"), "*We up n ready my friend*"

(423) 367-6939 (Lisa Weems) to Target Telephone #1, "*Can I come see u this morning*"

Target Telephone #1 to Weems, "*Not yet just getting on my end*"

Weems to Target Telephone #1, "*Ok babe just let me know*"

Target Telephone #1 to Target Telephone #2, "*On way back my people had slow*"

Target Telephone #2 to Target Telephone #1, "*Just woke up bro let me know wen u toubh down am on Lovell Rd just me an olady can u stop by on way thou*"

Target Telephone #1 to Target Telephone #2, "*Sorry now I passing 76*"

Target Telephone #2 to Target Telephone #1, "*Just got txt said u was passing 76 is that b4 this exit opq after bro*"

Target Telephone #1 to Target Telephone #2, "*Pass 81 10 minutes*"

Target Telephone #2 to Target Telephone #1, "*K*"

Target Telephone #1 to Lisa Weems, "*How many T shirts*"

Target Telephone #1 to (423) 341-0330 (Jerry Smith), "*How many T shirts*"

Smith to Target Telephone #1, "*I have 10 extra large so as many as u let me have exyra extra I'll cover tomorrow*"

16

Weems to Target Telephone #1, "*Just got $ for 2 if ya work with me on the 5 Jr moved. Dude ain't answering now, he'll text when it's too late. Lol Jr already been to see ya*"

Target Telephone #1 to Weems, "*No not coming*"

Target Telephone #1 to Weems, "*You bring his money*"

37. Based on my training and experience, and my knowledge of this investigation, I believe that Joe SHOLTZ utilized Target Telephone #1 to contact Leslie STEELMAN on Target Telephone #2 and advise STEELMAN that Elizabeth Patterson and Brandon Thorpe were still in Georgia picking up the methamphetamine this morning. I believe that SHOLTZ contacted his methamphetamine source of supply ("Fred") to advise him that they were ready to pick up, then advised Lisa Weems that they were still in the process of obtaining the methamphetamine. I believe that SHOLTZ kept STEELMAN advised of the location of the methamphetamine as it traveled back into Tennessee. I believe that SHOLTZ inquired of Weems and Jerry Smith how much methamphetamine ("*T shirts*") they needed. I believe that Smith told SHOLTZ that he had $10,000.00 ("*10 extra large*") and Weems ordered two (2) ounces or pounds, asking for SHOLTZ to cut her a break on the cost of the five (5) sold by David Estep, Jr.

**December 4, 2016**

Target Telephone #1 to Target Telephone #2, "*Morning*"

Target Telephone #2 to Target Telephone #1, "*Wat up*"

Target Telephone #1 to Target Telephone #2, "*You sold out in going down about 2 wanna ride*"

Target Telephone #2 to Target Telephone #1, "*Let me chck with lady*"

17

Target Telephone #2 to Target Telephone #1, "*I cant go but I got tha money 4 anther one am out to bro*"

Target Telephone #2 to Target Telephone #1, "*Am at room call me wen u get close*"

Target Telephone #1 to Target Telephone #2, "*2 for sure*"

Target Telephone #2 to Target Telephone #1, "*What about 1 an half*"

Target Telephone #1 to Target Telephone #2, "*You lose remember we talk they cut to 16*"

Target Telephone #2 to Target Telephone #1, "*I got u 12*"

Target Telephone #1 to Target Telephone #2, "*K*"

Target Telephone #1 to Target Telephone #2, "*Off exit*"

(approximately 8 hours later)

Target Telephone #1 to Target Telephone #2, "*Come on*"

38. Based on my training and experience, and my knowledge of this investigation, I believe that Joe SHOLTZ utilized Target Telephone #1 to contact Leslie STEELMAN on Target Telephone #2 to inquire if STEELMAN had sold out of methamphetamine yet and if he wanted to drive down to Georgia with SHOLTZ to pick up additional methamphetamine. I believe that STEELMAN responded to SHOLTZ that he could not go but had enough money for another pound of methamphetamine. I believe that eventually, STEELMAN advised SHOLTZ that he had $12,000.00 for 1½ pounds of methamphetamine. I believe that after SHOLTZ obtained the methamphetamine from his source in Georgia, he contacted STEELMAN to come get his.

**December 7, 2016**

Target Telephone #1 to Target Telephone #2, "*Hey canyon go today I need 2*"

18

Target Telephone #2 to Target Telephone #1, "*I need my self wer and wen u wont me call me*"

Target Telephone #1 to Target Telephone #2, "*I've got 3 appointment today if you could man that would help me out I got money for one and half if you do same spilt one hell do this everytime*"

Target Telephone #1 to Target Telephone #2, "*Are you set to go*"

Target Telephone #1 to (732) 710-8816 ("Fred"), "*I'm way be there 730*"

Target Telephone #1 to "Fred", "*Not me but they on wy*"

Target Telephone #1 to Target Telephone #2, "*You on wy*"

"Fred" to Target Telephone #1, "*Hi you come*"

Target Telephone #1 to Target Telephone #2, "*Are you gping*"

Target Telephone #1 to "Fred", "*Yes be there bout 8*"

Target Telephone #1 to Target Telephone #2, "*How close to Cruse Rd*"

Target Telephone #1 to "Fred", "*Be close 730*"

Target Telephone #1 to "Fred", "*Be in Hummer*"

Target Telephone #2 to Target Telephone #1, "*Hr half*"

Target Telephone #1 to "Fred", "*Be there 45*"

Target Telephone #1 to "Fred", "*3*"

Target Telephone #1 to "Fred", "*Be 8 real close*"

"Fred" to Target Telephone #1, "*Ok*"

Target Telephone #1 to Target Telephone #2, "*Told him bout 8 you be there*"

Target Telephone #1 to Target Telephone #2, "*Are you on 85*"

Target Telephone #2 to Target Telephone #1, "*Yes*"

19

Target Telephone #1 to "Fred", "*On 85 be just few he in black Hummer park in front of Wing?*"

Target Telephone #1 to "Fred", "*On way down 85*"

"Fred" to Target Telephone #1, "*Ok*"

"Fred" to Target Telephone #1, "*605 Mt Zion Rd Jonesboro GA*"

Target Telephone #1 to Target Telephone #2, "*605 Mt Zion Rd Jonesboro GA*"

Target Telephone #2 to Target Telephone #1, "*K*"

Target Telephone #1 to Target Telephone #2, "*You will see and know just park he may get in look for white Charger black strip down center it may be him*"

Target Telephone #1 to Target Telephone #2, "*They own there restaurants*"

Target Telephone #1 to "Fred", "*He's at the Mexican restaurant in back*"

"Fred" to Target Telephone #1, "*Ok*"

39. Based on my training and experience, and my knowledge of this investigation, I believe that Joe SHOLTZ utilized the text messaging service on Target Telephone #1 to communicate with Leslie STEELMAN on Target Telephone #2. I believe that SHOLTZ asked STEELMAN to travel to Georgia and meet with "Fred" to obtain three (3) pounds of methamphetamine, to be split between them. I believe that SHOLTZ contacted "Fred" and advised him that someone else was coming in SHOLTZ' place. I believe that SHOLTZ continued communications with STEELMAN and "Fred" until they met with each other behind La Oaxaquena Mexican Restaurant located at 605 Mt. Zion Rd., Jonesboro, GA.

40. Through the course of this investigation, drug related text messages have been obtained by law enforcement to/from the cellular telephones utilized by many members of this drug trafficking organization. I know that members of this drug trafficking organization utilize

20

the text messaging service on their cellular telephones to communicate with each other regarding drug transactions. I know that members of this drug trafficking organization utilize numerous cellular telephones to communicate with each other regarding drug transactions. I believe that Joe SHOLTZ utilizes the Short Message Service (text messaging service) of Target Telephone #1 to communicate with David Estep, Jr., Lisa Weems, Jerry Smith, Leslie STEELMAN on Target Telephone #2 and others in furtherance of drug trafficking crimes.

41. Based on the facts set forth above, your affiant believes that Joe SHOLTZ utilizes the text messaging service of Target Telephone #1 and Leslie STEELMAN utilizes the text messaging service of Target Telephone #2 to distribute methamphetamine in the Eastern District of Tennessee.

## VERIZON WIRELESS ELECTRONIC COMMUNICATIONS

42. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail and text messages for Verizon Wireless subscribers may be located on the computers of Verizon Wireless. Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties

43. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging."

21

44. I have spoken with representatives of Verizon Wireless and understand that during the regular course of business they may possess five (5) to seven (7) days of stored electronic communications, namely text messages.

45. On December 30, 2016, a letter was sent to Verizon Wireless requesting that they preserve all historical electronic communications associated with the Target Telephone(s), pursuant to Title 18 United States Code (USC) 2703(f).

## LOCATION TO BE SEARCHED AND THINGS TO BE SEIZED

46. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachment A. Upon receipt of the information described in Attachment A, the information described in Attachment B will be subject to seizure by law enforcement.

## CONCLUSION

47. Based on my training and experience, I know that those involved in drug trafficking activities commonly use multiple cellular telephones, to include the text messaging capabilities, to contact others to discuss and arrange drug transactions and to further their illicit drug business. I also know that it is common for those involved in drug trafficking activities to change cellular telephones and telephone numbers frequently to avoid detection by law enforcement.

48. Based on the foregoing, there is probable cause to believe that the stored electronic communications, specifically stored text messaging and the associated packet data for the Target Telephone(s), contain evidence of drug trafficking, specifically violations of Title 21 USC 841

22

and 846, Distribution of Methamphetamine and Conspiracy to Distribute Methamphetamine, respectively.

## REQUEST FOR SEALING

49. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

50. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on January **10**, 2017, at Greeneville, Tennessee.

Respectfully submitted,

TODD A. BREWER
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on January /0th, 2017.

23

CLIFTON L. CORKER
United States Magistrate Judge

24

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with cellular telephone numbers (423) 702-1934 (subscribed to by Joe Thunder) and (865) 221-3753 (no subscriber information available), that is stored at premises owned, maintained, controlled, or operated by CELLCO Partnership DBA Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

1

## ATTACHMENT B

### Particular Things to be seized

#### I. INFORMATION TO BE DISCLOSED BY CELLCO DBA VERIZON WIRELESS

To the extent that the information described in Attachment A is within the possession, custody, or control of CELLCO Partnership DBA Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to CELLCO Partnership DBA Verizon Wireless or have been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), CELLCO Partnership DBA Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b. All existing printouts from original storage of all of the text messages described above;

c. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from December 13, 2016 to present;

d. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names,

1

addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f. Detailed billing records, showing all billable calls including outgoing digits, from December 13, 2016 to present;

g. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from December 13, 2016 to present;

h. Incoming and outgoing telephone numbers, from December 13, 2016 to present;

i. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j. All records pertaining to communications between CELLCO Partnership DBA Verizon Wireless and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II. INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(C) involving Joe Luther SHOLTZ, Leslie STEELMAN and others known and unknown to the agents since December 13, 2016, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. Various texts messages concerning violations of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(C).

2

b.    Records relating to who created, used, or communicated with the account or
identifier, including records about their identities and whereabouts.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by CELLCO Partnership DBA Verizon Wireless, and my official title is _____. I am a custodian of records for CELLCO Partnership DBA Verizon Wireless. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of CELLCO Partnership DBA Verizon Wireless, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of CELLCO Partnership DBA Verizon Wireless; and

c. such records were made by CELLCO Partnership DBA Verizon Wireless as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____

Date                                                          Signature

1